Case number 20-5074. Gerald H. Hawkins, individually and as a trustee of the C.N. Hawkins Trust and Gerald H. Hawkins and Carol H. Hawkins Trust et al, Appellants, versus David Longley Bernhardt, Secretary of the Interior et al. Mr. Dearson for the Appellants, Mr. Smeltzer for the Appellates. Good morning, Council. Council for Appellants, please proceed. Good morning. Thank you very much. I am David Dearson for the Plaintiff Appellants. I'd like to reserve, if possible, two minutes for rebuttal. Thank you. The District Court dismissed this case on standing ground, so it did not reach the government's motions to dismiss for failure to state a claim. We are asking both of this court to reverse the dismissal as to standing and also to rule that the government's 12B6 motions should be denied as well. I want to begin by clarifying that the ranchers understand their rights are junior to the tribe's rights and that they don't seek to diminish or take the tribe's rights. Rather, they're seeking to vindicate certain important procedural principles, procedural rights, which ensure that when the government exercises its power, and especially when it exercises its power in a manner that has significant impacts on the environment, that it bears some modicum of political accountability and that the proper decision maker be in place to make those final decisions. For us to establish standing on a procedural injury claim like this, all that needs to be shown is that if the procedural error were corrected, then the government might reach a different decision, one that could alleviate the harms done to the appellants. The United States filed these water rights claims. It litigated the claims in Klamath Basin adjudication, and it lends its requisite concurrence to calls placed on the water to effectuate the claims. Do you want to discuss redressability? Sure, Your Honor. The redressability here, as we see it, is that, you know, if these procedural errors are corrected, then someone in the government is taking a hard look at the serious environmental harms that are being done to the ranchers and their injuries. My point is that what about, and I gather you don't deny, that the tribe could continue to make a full call? Yes, Your Honor. The tribes could continue to make calls. But, you know, where the rubber meets the road here is that the Oregon Water Resources Department, they're the ones who issue these shutoffs that lead to plaintiffs' undisputed injuries. And as a matter of fact, and as a matter of Oregon state law, they don't effectuate those claims without having some concurrence from the United States government. And you can see that in the emails from the Oregon Water Resources Department that are pages 62 and 63 of the appendix, of which the district court took judicial notice but did not mention in its opinion. So Star-Cedar's claim requires us to agree that under Oregon law there is a concurrence requirement? Well, I don't think it requires that, Your Honor, because I think the alternative grounds to rule in our favor is that the United States' position as manager of the trust assets, the Department of Interior's and BIA's position as the entities with which Congress has charged the management of Indian affairs also places them in the final decision-making role. And so, Mr. Dearson, I think that that is a question in which I'm quite interested. I mean, I think a lot of whether there is causation and traceability here depends on the nature of the trust relationship between the government and the tribes. And I guess what evidence is there, and then what is the content of that trust relationship? Thanks, Your Honor. The government does point to cases like the Mitchell case from the U.S. Supreme Court that it's a limited trust. When you look at the decisions discussing limited trusts, the manner in which they are limited is that they don't limit the authority of the trustee. Rather, they in some cases limit the ability of the trust beneficiary to enforce certain things against the trustee. And the cases that we have, cases discussing both the trust relationship generally, cases like the White Mountain Apache case, the Shoshone-Bannock case, and the Mitchell cases itself, suggest that the tribes cannot force the government to take some action unless Congress has empowered them to do so. The opposite is the case. It's government that manages these trust assets. And specifically with regard to NEPA, we cite several cases in our reply brief at page 27, such as the Stand Up for California case, the Imsen case, and the Many Goats case, in which the Tenth Circuit says, you know, the duties and responsibilities of the secretary may conflict with the interests of the tribes, but the secretary must act in  So what is, though, you said the government has to manage the trust assets, right? But you agree that the tribes are the beneficial owners of those water rights. So what is the government's obligation with respect to managing those water rights? The government has several obligations, and they may conflict, and so there may be a balancing necessary. For example, the very Klamath Treaty from which these water rights derive also has, as an essential purpose, the promotion of agriculture. And it's not necessarily the case in every instance that, you know, merely because the tribes have been granted a ceiling on the water rights to satisfy their fishing interests, it's not necessarily the case that those rights have to be exercised to the fullest extent in every instance. And it's quite plausible that, you know, doing so, taking the full level of in-stream flow in every instance frustrates one of the essential purposes of the Klamath Treaty, which is to promote agriculture. And I'd also point you to the memos from the Office of Legal Counsel that we cite in our briefs, which suggest that where there are such competing considerations, including considerations of the interests of Indian tribes and of, you know, citizens generally, and environmental interests, as Congress has charged the government with taking care of with NEPA, that the government has to arrive at a unified position. And so some balancing may be necessary in order to effectuate the dual purposes of the Klamath Treaty Act. Well, I guess the question is, and I thought this is what Judge Rao was getting at, is if hypothetically we were dealing with the state of Arizona that wanted to put dams up so that the flow of water to your clients would be adversely affected, and the tribes are a sovereign nation here in that sense as to its water rights under the treaty, where does the Restoration Act give the United States any authority to balance, as it were, Arizona's interest in its own through the political process? Well, the nature of the trust relationship doesn't really derive, I don't think, from the Restoration Act, but rather from the Klamath Treaty itself. And that is, that's, you know, there's a qualification in the treaty to the tribe's aboriginal rights. I mean, the treaty was very specific as to what was reserved and what was not. Well, I think that's right. I think it reserved hunting and fishing rights, and it also was designed to promote agriculture. And it's plausible that the tribes could take less than the full in-stream flows awarded to them and still, you know, have enough water to preserve their fishing rights, while also preserving the possibility of sustainable agriculture in the upper Klamath Basin community generally. And the Bureau of Indian Affairs... It's conceivable, but the question is, where does the right arise in the United States, as you're arguing, to limit what the treaty otherwise preserves? The United States, as trustee, as manager of the trust assets, is the entity that makes important management decisions about the trust. And I'll point you again to the cases at page 27 of our reply brief. You know, it's not unusual for the Bureau of Indian Affairs to perform NEPA analyses before it makes decisions. Oh, sure, sure, sure. But I guess that's why I asked you, and I gather you acknowledge that there is no concurrence obligation that affects the tribe under state law. And so you're relying on the treaty and the treaty's promotion of agriculture. Your Honor, I'm sorry if I wasn't clear. I'm speaking about the treaty because I took that to be the substance of Judge Rao's question about the nature of the federal Indian trust relationship. But no, actually, very importantly here, there is the requirement in Oregon that as a matter of fact, and to the extent that the question is a factual question, I think we're entitled to a presumption in our favor on that issue in this stage of litigation. As a matter of fact, the Oregon Water Resources Department does not issue these shutoffs unless they've gotten concurrence from the BIA. And in those emails at page 62 and 63 of the appendix, the department does not even take the tribe's word that BIA has concurred. The tribes write in and say, here's our proposal for a call. We've got BIA concurrence. So you're saying that a concurrence requirement has grown up by pattern and practice over time? No, Your Honor, I think those emails reveal the practice. But I also think that as a matter of Oregon state administrative law, to which the administration of these water rights are subject because of the McCarran Amendment, cases like the Fort Vanoi case that we cite, or the Climate Law in Oregon, it has to be the legal owner who goes to the Water Resources Department and effectuates these calls. So it is both as a matter of fact and a matter of law, the shutoffs just don't happen unless BIA concurs. So both the McCarran Amendment and the Restoration Act indicate neither is affecting the tribes' rights under the treaty. Is that correct? I'm not sure I understand your question, especially in relation to the McCarran Amendment. It's very simple. What don't you understand about it? Well, so the McCarran Amendment subjects the administration of the water rights to state law. That's the ruling of the United States Supreme Court in the Colorado River case. It says the United States can be joined as a party. Yeah, so the text of the McCarran Amendment may not be completely clear on this matter. But the United States has decided in its Colorado River case that the effect of the McCarran Amendment is to subject the administration of these federal water rights to state administrative law. And I'd also point out that in the Adair case in the Ninth Circuit in which the substance of these water rights was decided, they commended the district court for leaving that sort of administrative procedure to the state administrative apparatus. So, Mr. Dearson, is your argument about the protocol then that the protocol is a problem because the government is delegating not only its ability to concur, but also whatever other discretionary fiduciary obligations it has over these reserved water rights? Right. I think that both the non-delegation doctrine says that Congress charged the assets and it didn't authorize them to sub delegate that federal authority beyond the boundaries of those departments. Furthermore, Congress passed NEPA, which said that when executive agencies are making decisions that have such deleterious effects on the human environment and here there's a state of environmental crisis in the upper Klamath Basin community, that it has to, at the very least, take those considerations into account. At no point in this process from the filing of the claims to the litigation of the claims to the concurrence is the United States ever made to consider the environmental effects, even though that's precisely what NEPA requires. Can I ask you about federal law? So after the 1954 Termination Act, but before the 1986 Restoration Act, wouldn't it have been obvious that the tribes owned and had a unilateral right to assert water rights? Your Honor, I don't know. That may seem obvious as a matter of federal law. I do not know how the Oregon Water Resources Department... How could it not be? I mean, the right is reserved, the trust relationship is extinguished, and yet the Extinguishing Act explicitly says this has no impact on the reserved rights. So in the 1954 to 1986 world, who could possibly assert the tribe's water rights other than the tribes unilaterally? Yes, okay. So in the absence of that trust relationship, then yes, I suppose BIA would not be required to make the management decision. Okay. So now we throw into the mix the Restoration Act, which reestablishes a trust relationship, which might tend to help you, which might at least set up the question of what's the nature of that trust. But the Restoration Act very specifically says that nothing in that statute shall affect in any manner any fishing or water right of the tribe or its members. So if they had the right... If they could have unilaterally asserted their water rights before the Restoration Act, it seems pretty obvious they can do the same thing after the Restoration Act because there's a very specific clause addressing that question. Your Honor, I disagree. I think that that clause is better read to be talking about the substance of the rights. And it's true that nothing about the substance of the rights is changed, but the McCarran Amendment, as I've said, subjects the administration of the rights to Oregon state law. And again, leaving federal law aside, I think it's key here that at the end of the day, it is the Oregon Water Resources Department who is issuing these calls, and they don't do so without BIA's concurrence. But we can't leave federal law aside to the extent it is supreme. I mean, your argument about what the state is doing only works if, as a matter of federal law, the ownership of the water rights is a question of administration under McCarran rather than within the scope of this reservation in the Restoration Act. Well, Your Honor, I don't think that the United States government could force the Oregon administrative apparatus to implement its regulatory programs. That, I think, would be a violation of the 10th Amendment. It would be a commandeering issue. And for the purposes of standing and causation and redressability, it is the Oregon Water Resources Department that's issuing the shutoffs, and they don't do so without BIA's concurrence. And, Your Honor, I think if you look at the government's brief, they move away from the issue of concurrence a little bit towards the issue of discretion. And I think that's because of the strength of the argument that the concurrence is required. You can also, by the way, look at the protocol itself, which I think is the government's biggest hurdle in trying to make both the arguments about concurrence and discretion. The protocol itself discusses, in exact terms, required concurrence. And the protocol also requires that when the tribes want to make a call, they have to submit their proposal to the Bureau of Indian Affairs with the reasons why they want to make a call. The Bureau of Indian Affairs deliberates over whether or not they will agree, disagree, or want to change the scope of those calls. And the United States actually has the right in the protocol unilaterally to make a call, even over tribal objections, the very provision that the ranchers are challenging here. But the more important point is that the tribe retains its independent right to make a call. Sure, and the tribes are free to make calls to the Oregon Water Resources Department. But again, as a matter of fact, the Oregon Water Resources Department will not effectuate or implement those calls unless they've gotten some concurrence from the Bureau of Indian Affairs. And again, the question... Excuse me, we can take that as a matter of fact? Yes, I think so. And based on the emails, and I think also that we make the argument that it's a matter of Oregon administrative law in cases like the Fort Benoit case. If you're not convinced on the legal question, perhaps it's an issue for certification to the Oregon State Courts. But for the purposes of standing and causation, where the rubber meets the road is at the Oregon Water Resources Department, and they don't issue the shutoffs. Excuse me, they do not issue the shutoffs unless they have some concurrence from the Bureau of Indian Affairs. Mr. Dearson, under the Restoration Act, when the statute speaks about real property, does that include water rights, in your view? Your Honor, I'm not sure. What about real property does the statute say that you're trying to ask about? Well, I mean, for instance, well, I mean, they talked about real property in a number of contexts, and I believe there are some Supreme Court decisions suggesting that water rights are included with real property rights. Yes, I think it's fair to characterize them as real property, although I'd also point out that they're a special form of property, and particularly in the western United States. Where they have the system of prior appropriation, rather than, you know, pertinent water rights. So I guess, I mean, under, I mean, putting aside the Oregon state law requirements, I mean, what is your strongest argument that under federal law, the government maintains the right to manage this water, even though the water rights are you know, are your strongest case for that? So I think those cases include the Shoshone-Bannock case, the Mitchell cases from the United States Supreme Court, and the White Mountain Apache case, in all of which the court spoke of the affirmative obligation of the United States to make, to manage the trust assets in the manner that it believes appropriate, and that the tribes could not strong arm the United States as trustee into making the decisions that the tribes prefer. And furthermore, specifically with respect to NEPA, there are those cases at page 27 of the reply brief, including the Many Goats case, in which the Tenth Circuit said, again, you know, the interests of the government under NEPA may conflict with the interests of the tribes, and the government still must follow the strictures of NEPA. I'd also point out that Congress, you know, charged the Department of Interior and the Bureau of Indian Affairs with the management of Indian Affairs. And when it comes to management decisions that have such serious environmental impacts, those certainly seem to be the type of major decisions which Congress has placed in BIA and Interior, and which Congress has not permitted to be delegated beyond the the bounds of those agencies. So you think it's impermissible for the government to decide to exercise its management authority, its discretionary management authority, by leaving those decisions to the tribes? By leaving them wholesale to the tribes? Yes, Your Honor, I do. I think that's the ruling from FCCV Telecom, or rather from the U.S. Telecom case from this court, as regards the general non-delegation argument. And then, you know, I think that the case law I've cited supports the notion that when it comes to NEPA considerations, it must be the government that makes the considerations. They certainly can and should incorporate, you know, the tribes' position as an element of their decision making. And certainly the tribes are in a good position to know or to have a good information about what level of in-stream flows will be necessary in a given instance. But no, Your Honor, they cannot wholesale delegate that decision-making authority. And that's all that the ranchers are seeking here. Again, at no point has the government been made to consider the serious environmental crisis that they're facing. And all they ask is that somebody who's politically accountable to them, somebody in the government, be the one who's finally making these decisions, and that the government not pass the buck onto the tribes, as it were. All right, why don't we hear from counsel for Apley, and we'll give you a couple of minutes on rebuttal. Thank you. May it please the Court, John Smeltzer for the Department of the Interior. Your Honor, the linchpin of this case is the question of the scope of the tribe's authority to manage their own water rights. Under federal law, the Klamath Tribes are a sovereign entity with the power and authority to exercise and control their own water rights. In the Protocol Agreement, the tribes agreed to consultation and coordination with BIA before making a call on their water rights. But the Protocol Agreement didn't give the tribes their authority to exercise their water rights or to make water rights calls. And for that reason, all of the plaintiff's claims fail. They lie standing because there is no injury traceable to the Protocol Agreement. And their claims on the merits fail because there's been no delegation of authority, so there's no implication of the non-delegation doctrine. And there is no federal action that has the possibility of having environmental effects for which there needs to be a NEPA review. Even if, Your Honor, this Court were to decide that somehow the United States and BIA does have management authority over the exercise of these rights, though the plaintiff's claims still fail because the non-delegation doctrine does not apply to a revocable assignment of a property right, nor does NEPA apply because there's a clear NEPA exemption which counsel did not address. If I can ask you the same similar question to what I asked Mr. Dearson. So in the government's view, what is the nature of the trust relationship between the government and the tribes here, what is the government's obligations or rights and responsibilities as trustee for these water rights? Sure, Judge, and this is the classic case of a limited trust. These are real property rights that the tribes reserved unto themselves, and which were reserved for them in the 1864 treaty. And the United States government and United States law recognizes the tribes as sovereigns with rights of self-government control over their own interests, including their own property rights. So the trust designation with respect to the property rights, including the water rights, is largely a designation as to whether those rights can be alienated and the nature of the rights. The rights are ultimately held by the United States in perpetuity for the tribal interests, so the tribe can't alienate the rights. But beyond that limited designation, in order to have a trust obligation under federal law, there has to be a statute that imposes them. Well, so why in your view does the Restoration Act not impose a broader trust obligation? Because it just restores the standard trust relationship that would exist between the United States and a tribe with respect to its reservation, its reserved rights, and its water rights originally. And as Judge Katz has pointed out, there was a termination act in 1954. The tribes went to court, asserted their water rights, the Ninth Circuit determined that they had full control over those rights, and those rights existed. So there's no question about that. And the 86 Restoration Act said it wasn't going to from the Ninth Circuit, right, is decided in between these two times when there is no trust relationship between the government and the tribes. And so it seems to me that the language of that case talking about control is all in the context of there not being a trustee relationship. And so I think, you know, we have to look at, you know, what type of control might have been re-established by the Restoration Act. For your honor, and if you take away the termination act, take away the Restoration Act, and just treat it as though it were tribal property throughout, the same result, you get to the same place. Because under federal law, the property rights of the tribe are theirs to control and exercise. The only exception to that is when Congress steps in and provides a specific management authority that may lead to a particular obligation, a trust obligation. Well, what about in the Restoration Act, the authority under Section 8 for economic development, that the secretary shall put forth a plan for economic development? Does that give the government some greater role as a trustee? I don't believe it would be sufficiently specific to give rise to any particular obligation, certainly that gives the BIA discretion to work with the tribe. It's not a discretionary duty, it says that it shall submit such a plan. Right, I don't think there's any suggestion that the government's broad authority or obligation to assist with the tribe and to develop a particular plan for the idea that the tribe retains its sovereign powers and authorities over its own water rights. I think that you're answering a different question from the one that I'm asking. It doesn't seem to me necessarily true that because they have, they're a sovereign, and because they have property rights, that that means the government doesn't also have some obligation as a trustee to exercise some fiduciary control over how the tribes exercise those rights. And so I want to understand why the government's position is, is that it has no fiduciary role essentially in this trust relationship. And I guess that's the question that I feel like is not getting answered here. Sorry, Your Honor, let me try again. The United States Supreme Court has held that federal trust obligations, fiduciary obligations to tribes are obligations that there is no specific trust obligation writ large that gives the United States either the authority or the duty to manage tribal resources. They derive from statute. It's the United States versus Hickory Apache tribe. It's one of the most recent cases to address that proposition. So all of the cases that counsel cited about where there were some trust obligations found were all cases where there were statutes with a trust duty imposed. The White Mountain cases are cases where there are statutes and regulations that require the government specifically to manage timber resources. And in that context, then of course the tribe's sovereign control over its own timber resources are reduced to some extent. And the government has then the fiduciary obligation as manager of the corpus to ensure that that resource is the tribe. But that derives from those particular set of statutes. And in the Mitchell line of cases, the Supreme Court specifically said that there is no obligation and there is no trust duty except that duty that are accepted and acknowledged by statute. The trust designation generically, the limited trust that exists for any federal reservation or property rights that largely just a designation with respect to alienation, the extent to which rights can be alienated, and also a reference to Congress's plenary authority to step in and to legislate if Congress chooses to provide a scheme for management of rights. But there is no such scheme in this case. And again, the cases that are cited in the plaintiff's brief are cases where there's a statute or where the United States is being called under the McCarran Amendment to adjudicate tribal claims. Because the United States Supreme Court has held that the McCarran Amendment, even though it doesn't say so on its face, applies to federal reserve rights that are held on behalf of tribes. And therefore, the government has, when it adjudicates, the McCarran Amendment adjudications has some obligation and authority to assert claims on behalf of tribes. Judge Cassis? Yes. Suppose I agree with you that as a matter of federal law, the tribes have unilateral control over their water rights. It still seems that the federal agency has taken a different position. And we can't review or reverse their decision. So for standing purposes, don't we have to take as a given that on their understanding of the law, even if we think it's wrong, the government needs to concur in the call in order for the water right to be enforced? Your Honor, I don't think so, because there's been no formal legal determination. And also, let me address the notion that it's a factual question. I'm sorry, the notion that I didn't hear. That it's a factual issue, for which this court defers to some sort of factual determination. It's not a factual issue. It's a legal issue as to whether there's a concurrence requirement. And so what we submit to the court is there is no concurrence requirement under federal law, the reasons we have just talked about. There's also no federal concurrence requirement under state law. And those issues were briefed by both sides. On this point to the Fort Lanois case, which was not a case about calling on water rights. It was a case about transferring the place of use of water rights under a statute that specifically addressed, or used the term, the holder of a water right. And so the holder has to concur in that. And that state court... Suppose I agree. Suppose I also agree with you that it's a legal question rather than a fact question. We still have indicia from the Oregon agency, tending to show that rightly or wrongly, they think as a legal matter that concurrence is required. Sure. But if this court were to affirm what is the law, which is there is no concurrence requirement. I had no expectation that the Oregon state officials would disagree with the judgment of this court. And even if for some reason they were, that doesn't change the sort of legal causation that's required both for standing and specifically for NEPA. No, I mean, but standing is injury in fact. And even if we were completely right in our conviction that the tribe unilaterally controls these rights, and even if the state agency were completely wrong in its conviction to the contrary, as a matter of fact, their issuance of... Their enforcement of the water right will depend on whether or not the I would say, Your Honor, is that causation even for standing, this court has suggested that sort of platform mechanical causation is sufficient. But if this court were to determine that for that mere reason, because there are employees of the Oregon Water Resources Department who are not following federal and state law in terms of honoring the calls from the tribe, that that provides standing here. There clearly is still not a claim under the non-delegation doctrine, because there's no authority that's been delegated. And there's also no claim under NEPA, because under the Supreme Court's ruling in public citizen, it's absolutely clear that you need legal causation to have a NEPA. There has to be more than just but for causation. The United States has to have some discretionary authority over the action, or the agency has to have some sort of mechanical standing, there would not be a claim, a valid claim under either theory of the case that the plaintiffs are putting forward here. And I would also argue or advise the court, in addition, that if somehow there was some authority that had exercised here, there's still not valid claims. Because this is not a case like US Telecom, where there's a delegation of regulatory authority, this is simply an assignment, a revocable assignment of a property right by, if it's the case, a trustee who has authority over to the beneficiary in a context where there is no suggestion or possibility of a violation of a revocable assignment of a property right to a beneficiary. There's no precedent or law that would support the idea that that somehow implicates a non-delegation doctrine, delegation of regulatory authority like the US Telecom. And then also, with respect to the NEPA context, of course, there's an express exemption for civil enforcement actions, and a call system exists solely to enable enforcements of adjudications and judgments in water rights cases. And on its face, that exemption applies to what is happening here. And what the court has to keep in mind with respect to that exemption is the purpose for the exemption, and the purpose is that you can't plausibly do NEPA in the context of a civil litigation and applying an injunction, and also the purposes of the, I'm sorry, what a civil enforcement action does is preserve the status quo. Again, we're talking about in-stream water rights, that the exercise of the tribe's means that those flows remain in the water, and the junior water users, plaintiffs or others, are unable to take water out of the system. And so that's simply maintaining the status quo, and falls clearly on the face within, squarely within the NEPA exemption. I see my time has rolled over. If the judges have any other questions, I'd be happy to answer them. I'll second. Anything further? Judge Rao? I'll second. Thank you, counsel. Thank you. Your counsel for appellants? Thank you, and may it please the court. I think that this, there's been a lot of discussion regarding the concurrence requirement, and discussion to the effect that perhaps the United States concurrence is not required as a matter of federal law, or even as a matter of state administrative law, in order to effectuate the water rights. But again, I think when you're deciding this case, which is challenging the protocol amendment, probably the first thing you'll look at is the protocol, the protocol itself, which speaks of required concurrence. The very provision that the ranchers are challenging is one in which the government promises not to withhold required concurrence. And I don't think, I think the implication is quite clear that its concurrence would be required, at least in some circumstances. And furthermore, that absent such a promise, it may have reason to disagree with the tribe's decision to place a call, or even just the scope of a call in a given case, and that it may actually withhold such concurrence. And as far as competing obligations, specific competing obligations of the United States, in terms of interests that it has to balance, again, the Klamath Treaty, from which the water rights derive, and which created this trust relationship, one of the purposes of the Klamath Treaty was to promote agriculture. And the deleterious effects, the deleterious environmental effects here may well frustrate that purpose of promoting agriculture. Although I'll admit, frankly, it's somewhat hard to say, again, because the government is avoiding its obligations underneath, but to consider those effects. And with the ranchers succeed in this case, all they're trying to do is to restore some measure of political accountability where there currently is none. Again, at no point in this process was the government made to consider the serious environmental harms being done to the ranchers and to the upper Klamath Basin agricultural community generally. And perhaps the NEPA analysis reveals that the tribes should get precisely what they ask for. But I think the fair implications from the allegations in our pleadings is that some balancing may be appropriate, and that the United States could, in fact, arrive at a position that preserves enough water for the tribes to have their fishing rights, while still permitting sustainable agriculture in the region. Thank you, counsel. We'll take the case under advisement.
judges: Rogers, Katsas, Rao